**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Ruben Martinez-Villezcas,<br><br>    Defendant. | No. CR 18-1296-TUC-CKJ (DTF)<br><br>**ORDER** |

On November 20, 2018, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation ("R&R") (Doc. 118) in which he recommended that the Motion to Suppress (Doc. 82) filed by Ruben Martinez-Villezcas ("Martinez-Villezcas") be denied. Martinez-Villezcas has filed an objection (Doc. 137) and the government has filed a response (Doc. 147).

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472-73, 88 L.Ed.2d 435 (1985). However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instruction." Fed. R. Civ. P. 72(b)(3); *see also* 288 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made.").

*Report and Recommendation – Factual Background*

The factual background of the R&R is adopted with the following modifications:

1. Bureau of Land Management (BLM) Chief Ranger Grady Cook ("Cook") testified that law enforcement noticed the suspicious circumnavigation pattern beginning in April 2018 (Tr. 11/7/2018 at 25), rather than in May 2018, as stated in the R& R. (R&R, p. 2).

2. Cook asked Martinez-Villezcas if he had ever been in the area before (Tr. 11/7/2018 at 94), rather than asking if he had ever driven the route before as stated in the R&R. (R&R, p. 5).

3. The R&R states that "only two or three minutes had passed from when Defendant first pulled up and stopped in the intersection to when [Cook] heard over the radio that the trucks had failed to yield and were speeding toward them." (R&R, p. 5). However, Cook testified that approximately eight to ten minutes had passed when he heard about the failure to yield over the radio. (Tr. 11/7/2018 at 95).

Additionally, Martinez-Villezcas has disputed conclusions reached by the magistrate judge. The Court will consider these disputes in addressing Martinez-Villezcas' objections. *See generally United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir.1989) (cert. denied, 498 U.S. 825 (1990)) ("Probable cause may be based on the collective knowledge of all of the officers involved in the investigation and all of the reasonable inferences that may be drawn therefrom.").

*Reasonable Suspicion*

Martinez-Villezcas argues that Cook did not have a reasonable suspicion Martinez-Villezcas was involved in criminal activity. *See e.g., United States v. Hartz*, 458 F.3d 1011, 1017 (9th Cir. 2006) ("A police-initiated traffic stop is reasonable under the Fourth

Amendment if the police stop the vehicle because of a 'reasonable suspicion' that the vehicle's occupants have broken a law."); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975) (factors to be considered in determining whether reasonable suspicion exists to stop a vehicle in a border region include: 1) the characteristics of the area; 2) previous experiences of the arresting agents with traffic in the area; 3) proximity to the border; 4) characteristics of the vehicle stopped (including its type or load); 5) usual patterns of traffic; and 6) the behavior of the driver of the vehicle).

The magistrate judge summarized as follows:

> Here, the events unfolded on a route commonly used to circumvent a Border Patrol Checkpoint on Highway 83, which is located close to the international border with Mexico. The roads Defendant traveled on are unpaved and very rough. Normal automobiles would likely be damaged if they traveled these roads. Thus, the traffic is mostly limited to trucks and the roads are not heavily traveled. The Court concludes smugglers could easily expect to travel this route without encountering much if any traffic.
>
> This case presents the unique situation where law enforcement officers had both experience with traffic in the area and experience with Defendant's activities in the area. The photographs captured on the game cameras along with law enforcement officers' investigation leading up to the stop provide an abundance of suspicion. Weeks before the stop, Border Patrol Agents had advised Ranger Cook that Defendant's truck had been seen near Parker Lake, a location notorious for alien smuggling, and only seven to ten miles from the border. *United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir. 1989) (reasonable suspicion is based on the collective knowledge of all officers involved in the investigation); *United States v. Butler*, 74 F.3d 916, 921 (9th Cir. 1996) ("collective knowledge of police officers involved in an investigation, even if some of the information known to other officers is not communicated to the arresting officer" can establish probable cause). Ranger Cook knew Defendant had travelled the circumnavigation route along with other vehicles in the same pattern at least twice, once with the same Toyota Tundra. The pattern of travel was so predictable that Ranger Cook was able to catch Defendant on the route almost immediately after he established his surveillance.

(R&R, p. 7).

The Court agrees with the magistrate judge's conclusion that Cook had reasonable suspicion before Martinez-Villezcas' vehicle crested the hill heading in Cook's direction. Cook and other law enforcement officers had experience with traffic and Martinez-Villezcas' activities in the area. Law enforcement knew the route was one commonly used to circumnavigate a U.S. Border Patrol checkpoint on Highway 83, an area close to the international border with Mexico. The April 2018 monitoring of the suspicious traffic

involved mainly Toyota trucks traveling the route on Sunday afternoons, but showed a change in May, when the trucks started traveling the route early in the morning on Sundays. Many of the same trucks traveled the route on weekends and often traveled in tandem with two or three of them at once, spaced about five to fifteen minutes apart from each other. Some of the beds of the vehicles carried ATVs. Cook testified that ATVs used for recreation in the area are usually transported in trailers, rather than in the beds of trucks. Law enforcement had had encounters with trucks fitting these patterns that confirmed they were engaged in illegal activity. Indeed, contrary to Martinez-Villezcas' argument that he is not associated with any other criminals, Cook testified that Martinez-Villezcas' vehicle had previously been seen engaging in this suspicious activity on the circumnavigation route on two earlier occasions and one of the prior law enforcement encounters involved a current co-defendant of Martinez-Villezcas.

Additionally, Martinez-Villezcas' argument that he engaged in innocent activities (e.g., his innocent conduct on May 26, albeit not on the circumnavigation route but on State Route 80; presence at Parker Lake on another date) and that his conduct on the date of the incident was innocent (e.g., presence of ATV was consistent with off-roading), does not prevent a conclusion law enforcement had reasonable suspicion to stop Martinez-Villezcas. Rather, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078-79 (9th Cir. 2013) (citing *United States v. Arvizu*, 534 U.S. 266, 277 (2002)).

"[B]ased upon the whole picture, [the] experienced [ ] officer[] could reasonably surmise that the particular vehicle [he] stopped was engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 421–22 (1981). Indeed, "'under the totality of the circumstances, and even though individual acts may be "innocent in [themselves] . . . taken together, they [] warrant[ed] further investigation." *United States v. Raygoza-Garcia*, 902 F.3d 994, 999–1001 (9th Cir. 2018) (quoting *Valdes-Vega*, 738 F.3d at 1078). The Court agrees with the magistrate judge that law enforcement had reasonable suspicion to stop Martinez-Villezcas.

*Probable Cause*

Martinez-Villezcas asserts he was arrested without probable cause when "Ranger Cook pulled his service weapon. Certainly Ranger Cook arrested Mr. Martinez when he handcuffed him." (Objections, Doc. 137, p. 17). The magistrate judge concluded that "there was no significant passage of time where [Martinez-Villezcas'] detention was unreasonable." (R&R, p. 8).

The Court finds the drawing of the weapon by Cook did not constitute an arrest of Martinez-Villezcas. Not only was Martinez-Villezcas unaware the weapon had been drawn, but "'it was prudent' for [Cook] to do so because he was alone and outnumbered." *Washington v. Lambert*, 98 F.3d 1181, 1190 (9th Cir. 1996) (quoting *United States v. Serna–Barreto*, 842 F.2d 965, 968 (7th Cir.1988). Indeed, the Ninth Circuit has stated:

> [B]ecause we consider both the inherent danger of the situation and the intrusiveness of the police action, . . . pointing a weapon at a suspect and handcuffing him, or ordering him to lie on the ground, or placing him in a police car will not automatically convert an investigatory stop into an arrest that requires probable cause.

*United States v. Edwards*, 761 F.3d 977, 982 (9th Cir. 2014) (quoting *Lambert*, 98 F.3d at 1186).

Further, for that same inherent danger that existed because of the approaching vehicles, the intrusiveness of placing Martinez-Villezcas in handcuffs in the back of the law enforcement vehicle does not convert the stop into an arrest. *See also Haynie v. County of Los Angeles*, 339 F.3d 1071 (9th Cir. 2013); *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982).

Moreover, when Martinez-Villezcas was arrested after the other vehicles had been stopped, probable cause existed to support the arrest. Cook obtained additional information following the initial stop. Martinez-Villezcas had failed to answer a question posed by Cook, had asked a question of Cook that Cook believed Martinez-Villezcas should have known based on his prior travel in the area, had attempted to redirect the conversation, and had "hesitated, kind of stammered, and then said no[,]" when asked if he had been in the area before. Moreover, Cook had observed a two-way radio in the vehicle that contained a group

1 of illegal aliens that matched the radio he had seen in Martinez-Villesacas' vehicle. While some of this information may have been innocent (e.g., Martinez-Villezcas "engaged in pleasant chit-chat with the ranger[,]" (Objections, Doc. 137, p. 14), rather than redirecting the conversation), the totality of circumstances establishes probable cause to support the arrest. *United States v. McCarty*, 648 F.3d 820, 838 (9th Cir. 2011) (as amended (Sept. 9, 2011)) ("To show that the police had probable cause to arrest [defendant], the government is required to prove only that 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'").

Accordingly, after an independent review, IT IS ORDERED:

1. The Report and Recommendation (Doc. 118) is ADOPTED.
2. The Motion to Suppress (Doc. 82) is DENIED.

DATED this 12th day of February, 2019.

_____
Cindy K. Jorgenson
United States District Judge